# SANDS LERNER

PROFESSIONAL CORPORATION

September 17, 2007

Neil S. Lerner
nsl@sandslerner.com

**Via Mail and Facsimile: 714-544-0006**
Samer Habbas, Esq.
Law Offices of Samer Habbas
420 Exchange, Ste. 270
Irvine, CA 92602

Re:  David Santoyo, Jr. v. Manuel Soto, Jr.
     DOI         : 6-10-06
     Our File No. : 21387.001

Dear Mr. Habbas:

We have carefully considered the policy limits demand made on behalf of your client in connection with this matter.

Currently, given the known facts, our client is not prepared to pay the policy limits demand because of a good faith belief that Mr. Soto has a complete defense to this case under the primary assumption of risk (PAR) doctrine. We have reviewed the pre-litigation deposition transcript of your client, the available police report, our investigation and the applicable case law on PAR, and have concluded that the doctrine applies to the known facts in this case.

Under the circumstances, therefore, we do not believe that the demand was reasonable because we do not believe the facts of this case, as currently known, will result in the imposition of liability on Mr. Soto. In conducting this analysis, we recognized that your client sustained serious and perhaps permanent injuries in this matter and has incurred medical bills in excess of $100,000. Nevertheless, as you will see from the cases cited below, PAR has been interposed frequently in tubing (and other water-related) cases to bar a severely injured plaintiff from pursuing a claim.

Once you have had an opportunity to review these cases, please let us know your thoughts on their applicability and, if necessary, we will re-evaluate our position.

An analysis of the water-related cases in California on PAR is set forth below. It would seem that the *Record*, *Bjork*, *Ford*, *Tank* and *Emerdinger* cases are dispositive on the applicability of PAR to the known facts in this case.

SANDS LERNER  PROFESSIONAL CORPORATION   ATTORNEYS AT LAW

Samer Habbas, Esq.
Re: David Santoyo, Jr. v. Manuel Soto, Jr.
September 17, 2007
Page 2

In *Ford v. Gouin*, 3 Cal.4th 339 (1992), the court held that the driver of a ski boat was not liable for injuries to the plaintiff water skier, because the doctrine of PAR applied to the sport of water skiing. In that case, the driver pulled the skier too close to the bank of a river, resulting in a collision with a tree branch which the skier could not see (because he was facing backward at the time). The Supreme Court affirmed summary judgment for the boat driver.

In *Ferrari v. Grand Canyon Dories*, 32 Cal.App.4th 248 (1995) the court held that PAR was a bar to recovery in a white water rafting incident.

In *Barber v. Marina Sailing, Inc.*, 36 Cal.App.4th 558 (1995) the court held that a crew member of a sailing ship whose fingers had been severed by mooring ropes was not barred from presenting his claims under PAR. The trial court granted summary judgment to ship owner and operator based on PAR. The trial court also held that maritime law did not apply. The appellate court reversed, holding that maritime law applies and that PAR is not available under maritime law as a complete defense. In addition, the ship was not racing yet, so it was not participating in a sporting activity when the accident happened.

In *Record v. Reason*, 73 Cal.App.4th 472, 480 (1999) the court held that tubing (where an inner tube is towed behind a speedboat on water) is a sport with inherent risks, and PAR applies. Specifically, a tow boat driver does not breach a duty of care to the tube rider if the driver travels 5 to 10 miles an hour over the recommended speed limit for towing, and makes a turn too sharp, causing the tube to whip outside the path of the boat. *Id.* at 485.

In *Bjork v. Mason*, 77 Cal.App.4th 544, 92 Cal.Rptr.2d 49 (2000) the court held that inner tubing was a sport but reversed summary judgment because of the presence of a triable issue of fact having to do with the allegation of equipment failure in the case. The summary judgment for the defendant was reversed, where he supplied all of the equipment used in the tubing, and where one piece failed and caused the injury at issue. Defendant may still be liable for negligently providing a defective rope, even though he could not be liable, based on PAR, for driving the boat.

In *Shannon v. Rhodes*, 92 Cal.App.4th 792, 794, 112 Cal.Rptr.2d 217 (2001) the court reversed the trial court and held that PAR does not apply to bar the negligence claim of a passenger in a boat simply being used to ride around on a lake. The overriding consideration in the application of PAR is to avoid imposing a duty which might chill vigorous participation in the implicated activity and thereby alter its fundamental nature.

In *Whelihan v. Espinoza*, 110 Cal.App.4th 1566, 2 Cal.Rptr.3d 883 (2003) the court was presented with the question whether the personal use of jet skis was an active sport to which the PAR doctrine was applicable. Noting that previous cases had determined that the doctrine of PAR applied to several similar personal (noncompetitive) water sports, the court determined that as a matter of common knowledge, jet skiing is an active sport involving physical skill and

SANDS LERNER   PROFESSIONAL CORPORATION   ATTORNEYS AT LAW

Samer Habbas, Esq.
Re: David Santoyo, Jr. v. Manuel Soto, Jr.
September 17, 2007
Page 3

challenges that pose a significant risk of injury, particularly when it is done together with other jet skiers in order to add to the exhilaration of the sport by racing, jumping the wakes of the other jet skis or nearby boats, or in other respects making the sporting activity more challenging and entertaining. Consequently, it is the type of sporting activity that meets the criteria governing application of the doctrine of PAR.

In *Pearl v. Ferro*, 119 Cal. App. 4th 60, 13 Cal. Rptr. 3d 885 (2004) the court looked to both the inherent nature of jet skiing and the relationship of the parties in determining that a lower, recklessness standard should apply to casual users of jet skis, despite statutory language requiring that personal watercraft be operated in a reasonable and prudent manner. The court also noted that there is no legally material difference between the jet skis at issue in *Whelihan* and the Sea-Doos used in this case. It held:

> "We conclude that, in the absence of other considerations, the doctrine of PAR applies generally to the recreational activity of using a Sea-Doo, just as it does to other similar sports such as water-skiing (*Ford v. Gouin, supra*, 3 Cal.App.4th at p. 345, 11 Cal.Rptr.2d 30, 834 P.2d 724), "tubing" behind a motorboat (*Record v. Reason, supra*, 73 Cal.App.4th at pp. 475, 482, 86 Cal.Rptr.2d 547; *Bjork v. Mason, supra*, 77 Cal.App.4th at p. 550, 92 Cal.Rptr.2d 49), jet skiing (*Whelihan, supra*, 110 Cal.App.4th at pp. 1572-1573, 2 Cal.Rptr.3d 883), snow skiing (*Cheong, supra*, 16 Cal.4th at p. 1067, 68 Cal.Rptr.2d 859, 946 P.2d 817), "off-roading" with a motorcycle or "dune buggy" (*Distefano, supra*, 85 Cal.App.4th at pp. 1255, 1259-1265, 102 Cal.Rptr.2d 813), skateboarding (*Calhoon v. Lewis* (2000) 81 Cal.App.4th 108, 115-117, 96 Cal.Rptr.2d 394), figure ice skating (*Staten v. Superior Court* (1996) 45 Cal.App.4th 1628, 1632-1636, 53 Cal.Rptr.2d 657), river rafting (*Ferrari v. Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 251, 253, 38 Cal.Rptr.2d 65), and long-distance group bicycle riding (*Moser, supra*, 105 Cal.App.4th at pp. 1218-1223, 130 Cal.Rptr.2d 198)."

In *Tank v. Barney*, 2005 WL 806697 (Cal. App. 2005) the driver of a tow boat pulling an inner tube was entitled to summary judgment. In that case, the driver towed plaintiff into a small cove and turned the boat close to the shore, causing the plaintiff to be thrown up onto the rocks and shore of the cove.

SANDS LERNER   PROFESSIONAL CORPORATION   ATTORNEYS AT LAW

Samer Habbas, Esq.
Re: David Santoyo, Jr. v. Manuel Soto, Jr.
September 17, 2007
Page 4

In *Emerdinger v. Teng*, 2007 WL 2137953 (Cal. App. 2007)[1] plaintiff was injured in the Sacramento Delta while he was tubing, which the court described as being towed by a motorboat while holding onto an inner tube. He alleged that his leg became entangled in the tow rope as a result of the boat driver turning too sharply. The defendant moved for summary judgment on the grounds that PAR applied and thus there was no duty owed to plaintiff and the trial court granted the motion. The appellate court affirmed holding that tubing is a sporting activity subject to PAR. The court noted as follows:

> "More to the point in this instance, primary assumption of the risk has been held to operate as a bar to injury suits by participants in the sports of waterskiing (*Ford, supra,* 3 Cal.4th 339, 11 Cal.Rptr.2d 30, 834 P.2d 724), jet skiing (*Whelihan v. Espinoza* (2003) 110 Cal.App.4th 1566, 2 Cal.Rptr.3d 883), river rafting (*Ferrari v. Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 38 Cal.Rptr.2d 65), and tubing behind a motorboat (*Record v. Reason* (1999) 73 Cal.App.4th 472, 86 Cal.Rptr.2d 547 (*Record*))."

Based on our analysis of these cases, and on the known facts, we reiterate our client's position that it is not prepared to pay policy limits on this claim at this time. Once you have had an opportunity to review this letter, and the authorities cited, please let us know your position. If you believe we overlooked something, or misinterpreted these cases, please let us know and, if necessary, we will reconsider our position.

We look forward to hearing from you.

Very truly yours,

SANDS LERNER

Neil S. Lerner

NSL:cd

---

[1] We recognize that a few of these cases, like *Teng* and *Barney*, are unpublished opinions but thought they would be useful as a roadmap and as an indicator of how strong the PAR doctrine is in tubing cases.



**SANDS LERNER**

PROFESSIONAL CORPORATION

October 17, 2007

Neil S. Lerner
nsl@sandslerner.com

**Via Mail**
Samer Habbas, Esq.
Law Offices of Samer Habbas
420 Exchange, Ste. 270
Irvine, CA 92602

Re:  David Santoyo, Jr. v. Manuel Soto, Jr.
     DOI           :  6-10-06
     Our File No.  :  21387.001

Dear Mr. Habbas:

This is our response to your letter dated October 9, 2007, regarding whether the doctrine of Primary Assumption of Risk (PAR) applies to the facts of this case to shield Mr. Soto from liability for Mr. Santoyo's damages. We have considered your arguments and we disagree with your conclusions for the reasons stated herein.

You contend that the PAR doctrine is not applicable to this case because Mr. Santoyo did not understand or expect a collision, and the risk of a collision is not inherent in the sport of tubing. You also contend that Mr. Soto's driving was reckless, and that Record v. Reason, 73 Cal.App. 4th 472 (1999), is distinguishable because that case established that falling from a tube was an inherent risk of tubing, but that other types of accidents were not.

First, regarding Mr. Santoyo's beliefs and expectations, those are irrelevant under the PAR doctrine. In Knight v. Jewitt, 3 Cal.4th 296 (1992), the California Supreme Court held that a defendant's liability in sports where the PAR doctrine applies is based on "the nature of the sport itself" and not "the particular plaintiff's subjective knowledge and expectations." Id. at 313. In Ford v. Gouin, 3 Cal.4th 339 (1992), the California Supreme Court stated:

> [T]he question whether plaintiff's action properly was barred under the assumption of risk doctrine does not depend on the reasonableness or unreasonableness of plaintiff's action in skiing backward and barefoot in a narrow tree-lined channel, nor on whether plaintiff subjectively knew of the specific risk of harm posed by defendant's allegedly negligent driving or impliedly consented to relieve defendant of a duty of care owed to plaintiff. Instead, the

12400 WILSHIRE BOULEVARD SUITE 1300 LOS ANGELES, CA 90025   T 310.979.9144   F 310.979.9244
ATTORNEYS AT LAW

SANDS LERNER   PROFESSIONAL CORPORATION   ATTORNEYS AT LAW

Samer Habbas, Esq.
Re: David Santoyo, Jr. v. Manuel Soto, Jr.
October 17, 2007
Page 2

> propriety of the summary judgment turns on whether defendant's alleged conduct breached the legal duty of care that defendant owed to plaintiff. Id. at 344.

Regarding the fact that Mr. Santoyo was injured in a vessel collision rather than a fall, like the plaintiff in Record, that factual difference is immaterial. In Ford, the plaintiff was injured when, as a result of the defendant's negligent driving, he collided with a tree branch that protruded as much as 35 feet over the water. In that case, the Supreme Court held that the defendant was not negligent due to the PAR doctrine because the plaintiff's injury was the result of an inherent risk to watersports. In this case, Mr. Santoyo collided with a small moving vessel, which would have been more difficult for a driver to see and avoid than a large, stationary tree branch. If the possibility of colliding with a stationary tree branch is an inherent risk, as the California Supreme Court held in Ford, then the possibility of colliding with a small moving vessel is also an inherent risk. In Tank v. Barney, 2005 WL 806697 (Cal.App. 2005), the court found that collision with another object is an inherent risk of tubing and, on that basis, held that the boat driver could not be held liable for such a collision under the PAR doctrine.

You contend that the risk of collision with another vessel is not inherent to the sport of tubing because it would not chill vigorous participation in the sport if boat drivers are required to be "more cautious in keeping watch of other watercrafts that [pose] a threat to [their] riders." However, the California Supreme Court rejected the same contention in Ford. If watersports will be chilled by requiring boat drivers to avoid large trees, which should be fairly easy since the trees are not moving, then watersports would certainly be chilled if boat drivers were also required to avoid small moving vessels, which would be much harder than avoiding stationary trees.

You also contend that "in Record, the plaintiff had urged the operator of the boat to maneuver the boat in such an aggressive way to make him fall." However, no such fact appears in the published opinion in that case. In fact, in Record, the court noted that the Plaintiff had asked the driver to "go slow and take it easy" and to "kick back, because I don't want to get hurt." 73 Cal.App. 4th at 476. The court in Record did discuss "a conversation that day between the respondent [defendant] and Lynch [the spotter at the time of the plaintiff's accident] on the boat about a game the two were playing where the object was 'to try and knock one another off the tube using speed and momentum of the boat.'" Id. at 477. However, there is no indication that either that conversation or the game that the defendant and Lynch were discussing involved the plaintiff.

Finally, you contend that Mr. Soto's conduct was reckless, and not merely negligent. We dispute that Mr. Soto was even negligent. However, there is no evidence that he was reckless and we would ask that you think long and hard about making such an allegation on these

SANDS LERNER  PROFESSIONAL CORPORATION  ATTORNEYS AT LAW

Samer Habbas, Esq.
Re: David Santoyo, Jr. v. Manuel Soto, Jr.
October 17, 2007
Page 3

facts, as it would be nothing more than a transparent and cynical effort to avoid having this case dismissed on the merits by demurrer. Please recall that Robert Santoyo stated in his investigative interview on February 6, 2007, that the towboat was moving slowly and in a straight line when the collision occurred. Erica Robles stated in her investigative interview on the same date, that Mr. Soto had always operated the boat in a safe manner, including on the day of the accident, and your client did not testify to any facts that rise to the level of recklessness. In fact, the only witness whose statement is consistent with the conclusion of the police report, that Mr. Soto was driving negligently, was James Silverman. As you know, Mr. Silverman has some potential liability in this case because he allowed Juan Salazar to use the PWC despite his lack of experience riding such a craft.

We therefore maintain our position that Mr. Soto cannot be liable for Mr. Santoyo's damages under the PAR doctrine. Therefore, we reiterate our position that our client is not prepared to pay policy limits on this claim, at this time and on this record.

Very truly yours,

SANDS LERNER

Neil S. Lerner

NSL:cd



**SANDS LERNER**

PROFESSIONAL CORPORATION

November 16, 2007

Neil S. Lerner
nsl@sandslerner.com

<u>Via Facsimile and U.S. Mail</u>

Samer Habbas
Law Offices of Samer Habbas
16485 Laguna Canyon Rd., Ste. 230
Irvine, CA 92618

Re: *David Santoyo, Jr. v. Manuel Soto, Jr.*
DOI: 6-10-06
Our File No.: 21387.001

Dear Mr. Habbas:

We have looked into the possibility that Senator's Wash (also known as "Senator Wash") is a navigable waterway for the purposes of admiralty tort jurisdiction. Our analysis follows. We conclude that there is almost no chance that a court will find that admiralty jurisdiction exists for torts committed on Senator's Wash.

**It Will Be Your Burden to Prove That Admiralty Jurisdiction Exists Over This Case**

As the party seeking to invoke federal admiralty jurisdiction over a tort claim, "at the outset of the case," the court will require you to "establish both that the wrong occurred on the navigable waters of the United States (the "locality test") and that the activity giving rise to the incident had a substantial relationship to traditional maritime activity (the "nexus test")" *In re Bernstein*, 81 F.Supp. 2d 176, 177 (D. Mass. 1999). You will have to do so "by means of a nonfrivolous assertion of jurisdictional elements." *Id.* (internal quotation to *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 527 (1995), omitted). When we challenge subject matter jurisdiction, you will have "the burden of proving by a preponderance of the evidence the facts supporting jurisdiction." *Id.* (internal quotation omitted).

**To Meet That Burden, You Will Have to Satisfy Both the Situs and Nexus Tests**

The purpose of admiralty jurisdiction is to "apply[] a uniform body of law in a field involving commercial relations between states and with foreign nations." *Oseredzuk v. Warner Co.*, 354 F.Supp. 453, 455 (D.Penn. 1972), *quoting Doran v. Lee*, 287 F.Supp. 807, 809 (W.D.Pa. 1968). To that end, the courts have developed the two-part test mentioned above. "Admiralty jurisdiction as to torts requires

SANDS LERNER   PROFESSIONAL CORPORATION   ATTORNEYS AT LAW

Samer Habbas
Re: *David Santoyo, Jr. v. Manuel Soto, Jr.*
November 16, 2007
Page 2 of 6

locality (the situs of the waterway) and nexus (the status of the vessel or activities). Locality is satisfied by a navigable waterway, while nexus is satisfied by a sufficient relationship of the vessel to maritime activities." *In re Three Buoys Houseboat Vacations U.S.A., Ltd.*, 921 F.2d 775, 777 (8th Cir. 1990), citing *Sisson v. Ruby*, 497 U.S. 358 (1990); *Crawford v. Electric Boat Corp.*, No. 3:06CV01853(DJS), 2007 WL 2907941, at *3 (D.Conn. Oct. 5, 2007); *Bernstein*, 81 F.Supp. 2d at 178; *H2O Houseboat Vacations Inc. v. Hernandez*, 103 F.3d 914, 915, 916 (1996); *Hardwick v. Pro-Line Boats, Inc.*, 895 F.Supp. 145, 146 (S.D. Tex. 1995); see *Minix v. Fellers*, 654 F.Supp. 1127, 1128 (N.D. Cal. 1987).

**First, You Will Have to Prove that Senator's Wash Is a Navigable Waterway**

The first part of the test is "whether the tort occurred on navigable water . . . ." *Crawford*, 2007 WL 2097941 at *4, quoting *Grubart*, 513 U.S. at 534; *H2O*, 130 F.3d at 916. This part of the test is a threshold issue. If you are unable to prove it, a federal court will dismiss the case for lack of subject matter jurisdiction and not bother to consider the second part of the test. A state court will find it does not have admiralty jurisdiction and will apply California law, rather than federal maritime law.

"It is the character of the waterway that first must be decided. If the waterway in question is not navigable for admiralty purposes, it makes little difference what craft sets sail." *Three Buoys*, 921 F.2d at 780 (finding the Lake of the Ozarks is not a navigable waterway and therefore not subject to admiralty tort jurisdiction; "[I]t is the very fact that the vessel is on a navigable waterway at all that creates maritime jurisdiction."); *Hardwick*, 895 F.Supp. at 149.

**You Must Prove That Senator's Wash Is in Fact Navigable Now**

Although there are four concepts of navigable waters in federal law, the only one that concerns this case is navigability for admiralty jurisdiction. *See id.* at 147; *Oseredzuk*, 354 F.Supp. at 455-56.

Federal courts agree that the test for navigability for admiralty jurisdiction was announced by the United States Supreme Court in *The Daniel Ball*, 77 U.S. 557, 563 (1870):

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways of commerce, over which trade and travel may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in which such commerce is conducted by water.

**SANDS LERNER** PROFESSIONAL CORPORATION   ATTORNEYS AT LAW

Samer Habbas
Re: *David Santoyo, Jr. v. Manuel Soto, Jr.*
November 16, 2007
Page 3 of 6

*Davis v. United States*, 185 F.2d 938, 942-43 (9th Cir. 1950) (restating the test in analyzing whether Lake Tahoe was a navigable waterway for admiralty tort jurisdiction); *Three Buoys*, 921 F.2d at 778; *Crawford*, 207 WL 2907941 at *4; *Bernstein*, 81 F.Supp. at 178; *Hardwick*, 895 F.Supp. at 147 ("[T]he [*Daniel Ball*] test applies to all bodies of water, natural as well as artificial," citing *Ex Parte Boyer*, 109 U.S. 629, 632 (1884)); *Oseredzuk*, 354 F.Supp. at 455.

Federal courts further agree that navigability in fact is determined at the time the loss occurred. *Oseredzuk*, 354 F.Supp. at 456 (the possibility of future navigability is irrelevant to the determination of admiralty jurisdiction, instead it goes to the Commerce Clause power of Congress to regulate, one of the other three concepts of navigability in federal law). "Present navigability is the standard, and present navigability, as we construe it for admiralty . . . purposes, is not possible on the Lake of the Ozarks." *Three Buoys*, 921 F.2d at 779.

Therefore, for your case to survive a motion to dismiss for lack of subject matter jurisdiction, you will have to provide evidence that Senator's Wash was in fact a navigable waterway at the time of the incident.

**There is No Evidence of Shipping on Senator's Wash to Support a Finding That It Is a Navigable Waterway**

Federal courts have found waters on which actual interstate commerce takes place to be navigable waterways. "A body of water is part of the navigable water of the United States if it supports interstate commerce." *Minix*, 654 F.Supp. at 1128, citing *Davis*, 185 F.2d at 943.

Commerce, within this context, means shipping. "Commerce for the purpose of admiralty jurisdiction means activity related to the business of shipping, and not non-commercial fishing and pleasure boating." *Id.*, citing *Adams v. Montana Power Co.*, 528 F.2d 437, 439 (9th Cir. 1975). Recreational use, such as the boating and fishing that take place on Senator's Wash, is not interstate commerce. *See id.* at 1129 (finding Clear Lake, "used for recreational water sports and non-commercial fishing," is not a navigable waterway). Because there is absolutely no evidence of interstate shipping taking place on Senator's Wash, you will be unable to prove actual use in interstate commerce to support jurisdiction.

Federal courts have also found that waters that cross state lines are susceptible to being used in interstate commerce *per se*. *Davis*, 185 F.2d at 941 (finding Lake Tahoe to be navigable); *see Three Buoys*, 921 F.2d at 777 (referring to the Supreme Court's implicit finding regarding Lake Michigan in *Sisson v. Ruby*, 497 U.S. 358 (1990)). Here, however, Senator's Wash is wholly within the state of California. *Cano v. Neill*, 473 P.2d 487, 489 (Ariz. Ct. App. 1970). Therefore, you will be unable to prove that the reservoir crosses state lines to support jurisdiction.

SANDS LERNER   PROFESSIONAL CORPORATION   ATTORNEYS AT LAW

Samer Habbas
Re: *David Santoyo, Jr. v. Manuel Soto, Jr.*
November 16, 2007
Page 4 of 6

### Because Senator's Wash is Land-Locked and Dammed, the Court Cannot Find It to Be a Navigable Waterway

Federal courts have found time after time that land-locked and/or dammed waters wholly contained in one state are not navigable. *See, e.g., Three Buoys*, 921 F.2d at 779 ("First, the Lake of the Ozarks is not navigable in fact because of the existence of the Bagnell Dam . . . The lake cannot be negotiated past the dam."); *Bernstein*, 81 F.Supp.2d at 179, 179 n.5 (Lake Winnisquam and Lake Winnipesaukee in New Hampshire are not navigable); *Hardwick*, 895 F.Supp. at 148-49 (Lake Houston is not a navigable waterway for admiralty jurisdiction because it would require massive dredging and a dam is in the way; "Because of the dam, Lake Houston is landlocked to navigation in interstate commerce and travel throughout the year." "Lake Houston is located entirely within the State of Texas and . . . it is currently impossible for any boat to travel from the lake to any 'navigable' body of water."); *Minix*, 654 F.Supp. at 1128 ("Several small streams and springs feed Clear Lake at one end, none of which are large enough for commercial boating. The other end of Clear Lake is completely and permanently dammed in order to irrigate Yolo County agriculture. Such dams prevent the lake from serving as a passageway for commercial boats to and from other waterways."); *Oseredzuk*, 354 F.Supp. at 455 (finding that a man-made, landlocked lake adjacent to another landlocked lake was not navigable waters even though second lake was adjacent to a navigable river because "no boats, ships or vessels may enter or leave these two lakes by way of water" and citing to five more district court cases in which "land-locked lakes located wholly within one state have consistently been found to be nonnavigable within the meaning of admiralty law."); *see also Guillory v. Outboard Motor Corp.*, 956 F.2d 114, 114 (5th Cir. 1992) ("Even before construction of the dam, Crooked Creek was so shallow in depth and overgrown by brush that it was difficult, if not impossible, for any vessel to travel across its waters.").

Here, as in *Three Buoys, Hardwick, Minix, Oseredzuk, Guillory*, and numerous other cases, Senator's Wash is land-locked. The sheriff's report confirms this fact. A vessel on Senator's Wash cannot navigate from Senator's Wash to any other waters that are navigable for the purposes of admiralty jurisdiction. The mere proximity of the Colorado River to Senator's Wash is not sufficient. A commercial vessel must have been able to travel across the water from Senator's Wash and onto the Colorado River on the day the incident occurred for admiralty jurisdiction to adhere in this case. Because such navigation was and remains impossible, Senator's Wash is not a navigable waterway. Accordingly, there is no admiralty jurisdiction for torts occurring on Senator's Wash.

### This Case Also Fails to Present a Potentially Disruptive Impact on Maritime Commerce

The second part of the test, nexus (also referred to as "status' or "connection"), has two subparts. "With regard to the status test, there are two issues. First, a court must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to

SANDS LERNER   PROFESSIONAL CORPORATION   ATTORNEYS AT LAW

Samer Habbas
Re: *David Santoyo, Jr. v. Manuel Soto, Jr.*
November 16, 2007
Page 5 of 6

the incident shows a substantial relationship to traditional maritime activity." Crawford, 2007 WL 2907941 at *4 (internal quotation to *Grubart*, 513 U.S. at 534, omitted); *H2O*, 103 F.3d at 916, 917 n.3.

Here, as discussed above, there is absolutely no evidence of maritime commerce (*i.e.*, shipping) on Senator's Wash. Therefore, an incident on Senator's Wash cannot possibly disrupt maritime commerce. Accordingly, this case fails the first subpart of the second part of the test for admiralty jurisdiction.

**Conclusion**

We find that that there is absolutely no evidence to support a finding of admiralty jurisdiction for a tort committed on Senator's Wash. Moreover, the contention that such jurisdiction exists on a land-locked, dammed reservoir used exclusively for recreational boating and non-commercial fishing is frivolous in light of the overwhelming weight of case law stating that such waters are not navigable.

This case "involve[s] considerations of an exclusively local nature, devoid of substantive federal interest." *Oseredzuk*, 354 F.Supp. at 454. There is absolutely no possibility that a court will find that a tort on Senator's Wash invokes admiralty jurisdiction. Consequently, a federal court will be forced to dismiss this case for lack of subject matter jurisdiction. A state court will continue to hear the case, but will apply California law.

We wish to take the opportunity to point out to you that the California Court of Appeal recently upheld the defense of primary assumption of the risk as it relates to recreational boating. In *Truong v. Nguyen*, the court held that a passenger on a personal watercraft assumed the risk of injury merely by riding aboard the vessel. We provide a copy of this decision for your reference.

Accordingly, we are confident that the defense of primary assumption of the risk operates to shield our client from any potential liability for the claims you propose to file. Nevertheless, we have been authorized to offer $25,000 (twenty-five thousand dollars) as a full and final settlement of this matter.

Very truly yours,

SANDS LERNER

Neil S. Lerner
NSL:cd
Encl.