Westlaw.

473 P.2d 487                                                                                                         Page 1
12 Ariz.App. 562, 473 P.2d 487
(Cite as: 12 Ariz.App. 562, 473 P.2d 487)

Cano v. Neill,
Ariz.App. 1970.

Court of Appeals of Arizona, Division 1, Department B.
Stevan CANO, Appellant,
v.
Lois B. NEILL, a single woman and surviving mother of Judith Lynn Cozart, deceased, Appellee.
No. 1 CA-CIV 1247.

Aug. 11, 1970.
Rehearing Denied Sept. 22, 1970.

Wrongful death action brought against driver of pickup truck which struck side of bridge when driver failed to negotiate sharp curve. Driver appealed from an order of the Yuma County Superior Court, Cause No. C 26190, John A. McGuire, J., granting plaintiff a new trial after jury had returned a verdict in favor of defendant. The Court of Appeals, Haire, J., held, inter alia, that the trial court was justified in granting plaintiff a new trial, as there was ample evidence of negligence by defendant proximately causing the death of plaintiff's decedent, as the evidence to the contrary was at best of less than equal force, as there were broad gaps and patent inconsistencies in defendant's testimony, and as his defense of mechanical malfunction was less than strongly supported.

Order affirmed.
West Headnotes
[1] Appeal and Error 30 ⚷854(6)

30 Appeal and Error
    30XVI Review
        30XVI(A) Scope, Standards, and Extent, in General
            30k851 Theory and Grounds of Decision of Lower Court
                30k854 Reasons for Decision
                    30k854(6) k. Granting or Refusing New Trial. Most Cited Cases
Order granting a new trial will be affirmed if it is justified on any one of the grounds stated in the order. 16 A.R.S. Rules of Civil Procedure, rules 59(a), par. 8, 59(m).

[2] New Trial 275 ⚷72(1)

275 New Trial
    275II Grounds
        275II(F) Verdict or Findings Contrary to Law or Evidence
            275k67 Verdict Contrary to Evidence
                275k72 Weight of Evidence
                    275k72(1) k. In General. Most Cited Cases
    (Formerly 275k72)
Although there is no general ground listed under civil procedure rules explicitly permitting a trial judge to grant a new trial when the verdict is contrary to the weight of the evidence, yet it seems clear that a trial judge continues to have the power to grant a new trial in that situation. 16 A.R.S. Rules of Civil Procedure, rule 59, (a).

[3] Appeal and Error 30 ⚷854(6)

30 Appeal and Error
    30XVI Review
        30XVI(A) Scope, Standards, and Extent, in General
            30k851 Theory and Grounds of Decision of Lower Court
                30k854 Reasons for Decision
                    30k854(6) k. Granting or Refusing New Trial. Most Cited Cases
New trial order which refers to the evidence in general terms of applicable civil procedure rule ("the verdict, decision, findings of fact, or judgment is not justified by the evidence or is contrary to law") is to be reviewed in the same manner as if trial judge had stated that the verdict was against weight of the evidence, and this is so even though trial judge also indicates a post-trial inclination to direct a verdict (as to liability) in favor of the moving party. 16 A.R.S. Rules of Civil Procedure, rule 59(a), par. 8.

[4] New Trial 275 ⚷6

275 New Trial
    275I Nature and Scope of Remedy
        275k6 k. Discretion of Court. Most Cited Cases
While it is true that the granting of a new trial is to a great extent discretionary with trial court, such

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

473 P.2d 487        Page 2
12 Ariz.App. 562, 473 P.2d 487
**(Cite as: 12 Ariz.App. 562, 473 P.2d 487)**

discretion, although broad, is legal and not arbitrary and must be exercised according to reason and law. 16 A.R.S. Rules of Civil Procedure, rule 59.

**[5] Appeal and Error 30 &#x1F5DD;979(2)**

30 Appeal and Error
   30XVI Review
      30XVI(H) Discretion of Lower Court
         30k976 New Trial or Rehearing
            30k979 For Insufficiency of Evidence
               30k979(2) k. Grant of New Trial in General. Most Cited Cases

New Trial 275 &#x1F5DD;68.2

275 New Trial
   275II Grounds
      275II(F) Verdict or Findings Contrary to Law or Evidence
         275k67 Verdict Contrary to Evidence
            275k68.2 k. Discretion. Most Cited Cases
   (Formerly 275k68(2), 275k68)
Where probative force of the evidence clearly demonstrates that verdict of jury is correct, trial judge exceeds bounds of judicial discretion in granting a new trial, and it is duty of appellate court to reverse the action. 16 A.R.S. Rules of Civil Procedure, rule 59.

**[6] New Trial 275 &#x1F5DD;72(2)**

275 New Trial
   275II Grounds
      275II(F) Verdict or Findings Contrary to Law or Evidence
         275k67 Verdict Contrary to Evidence
            275k72 Weight of Evidence
               275k72(2) k. Weighing Evidence as Court Function. Most Cited Cases
   (Formerly 275k72)
Trial court must have carefully weighed the evidence and be convinced that verdict is contrary to the weight of the evidence before it can grant a new trial on the state of the evidence; in other words, he cannot grant a new trial when the evidence merely balances on his mental scales. 16 A.R.S. Rules of Civil Procedure, rule 59.

**[7] Appeal and Error 30 &#x1F5DD;979(2)**

30 Appeal and Error
   30XVI Review
      30XVI(H) Discretion of Lower Court
         30k976 New Trial or Rehearing
            30k979 For Insufficiency of Evidence
               30k979(2) k. Grant of New Trial in General. Most Cited Cases
Once trial judge has exercised his discretion in favor of granting a new trial, his order will be affirmed on appeal even if in the view of the appellate court the evidence is merely "equiponderant", that is, evenly balanced on the mental scales of the appellate court. 16 A.R.S. Rules of Civil Procedure, rule 59.

**[8] Appeal and Error 30 &#x1F5DD;1015(3)**

30 Appeal and Error
   30XVI Review
      30XVI(I) Questions of Fact, Verdicts, and Findings
         30XVI(I)3 Findings of Court
            30k1015 Decision on Motion for New Trial
               30k1015(3) k. Weight of Evidence. Most Cited Cases
Order granting new trial will be affirmed unless appellate court finds the weight of the evidence to be in favor of the verdict; and in the weighing process, due regard must be given to the quality or belief-inducing effect of the evidence, and not merely to numbers of witnesses and quantity of testimony. 16 A.R.S. Rules of Civil Procedure, rule 59.

**[9] Appeal and Error 30 &#x1F5DD;1015(3)**

30 Appeal and Error
   30XVI Review
      30XVI(I) Questions of Fact, Verdicts, and Findings
         30XVI(I)3 Findings of Court
            30k1015 Decision on Motion for New Trial
               30k1015(3) k. Weight of Evidence. Most Cited Cases
"Equiponderant" test is viable in those cases in which there has been a compliance with the requirements of civil procedure rule requiring that new trial order specify with particularity the ground or grounds on which the new trial is granted. 16 A.R.S. Rules of Civil Procedure, rule 59(m).

**[10] Federal Courts 170B &#x1F5DD;560**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

473 P.2d 487  
12 Ariz.App. 562, 473 P.2d 487  
**(Cite as: 12 Ariz.App. 562, 473 P.2d 487)**

Page 3

170B Federal Courts  
    170BVIII Courts of Appeals  
        170BVIII(C) Decisions Reviewable  
            170BVIII(C)1 In General  
                170Bk554 Nature, Scope and Effect of Decision  
                    170Bk560 k. New Trial or Rehearing. Most Cited Cases  
    (Formerly 106k405(3.15))  
In federal practice, an order granting a new trial is generally not appealable, and it is only rarely reviewable at all.

**[11] New Trial 275 ⟜68.2**

275 New Trial  
    275II Grounds  
        275II(F) Verdict or Findings Contrary to Law or Evidence  
            275k67 Verdict Contrary to Evidence  
                275k68.2 k. Discretion. Most Cited Cases  
    (Formerly 275k68(2), 275k68)  
Trial judge, exercising a mature judicial discretion, should view verdict in overall setting of trial; consider character of evidence and complexity or simplicity of legal principles which jury was bound to apply to facts; and abstain from interfering with the verdict unless it is quite clear that jury has reached a seriously erroneous result. 16 A.R.S. Rules of Civil Procedure, rule 59.

**[12] New Trial 275 ⟜68.4(6)**

275 New Trial  
    275II Grounds  
        275II(F) Verdict or Findings Contrary to Law or Evidence  
            275k67 Verdict Contrary to Evidence  
                275k68.4 Particular Actions or Issues  
                    275k68.4(3) Torts  
                        275k68.4(6) k. Automobile Cases. Most Cited Cases  
    (Formerly 275k68(8), 275k68)  
In wrongful death action brought against driver of pickup truck which struck side of bridge when defendant failed to negotiate sharp curve, the trial court, after jury had returned a verdict in favor of defendant, was justified in granting plaintiff a new trial, as there was ample evidence of negligence by defendant proximately causing the death of plaintiff's decedent, as the evidence to the contrary was at best of less than equal force, as there were broad gaps and patent inconsistencies in defendant's testimony, and as his defense of mechanical malfunction was less than strongly supported. 16 A.R.S. Rules of Civil Procedure, rule 59(a), par. 8.

**[13] New Trial 275 ⟜68.1**

275 New Trial  
    275II Grounds  
        275II(F) Verdict or Findings Contrary to Law or Evidence  
            275k67 Verdict Contrary to Evidence  
                275k68.1 k. Contrary Verdict in General. Most Cited Cases  
    (Formerly 275k68(1), 275k68)  
Lack of evidentiary justification is an independent and self-sufficient ground for setting aside a verdict and granting a new trial. 16 A.R.S. Rules of Civil Procedure, rule 59(a), par. 8.

**[14] Trial 388 ⟜168**

388 Trial  
    388VI Taking Case or Question from Jury  
        388VI(D) Direction of Verdict  
            388k167 Nature and Grounds  
                388k168 k. In General. Most Cited Cases  
Trial judge is not justified in directing a verdict in every case in which he might justifiably set aside a contrary verdict as being against the weight of the evidence and grant a new trial. 16 A.R.S. Rules of Civil Procedure, rule 59(a), par. 8.

**[15] New Trial 275 ⟜6**

275 New Trial  
    275I Nature and Scope of Remedy  
        275k6 k. Discretion of Court. Most Cited Cases  
Unless trial judge has committed reversible legal error, a new trial motion is addressed to his discretion.

**[16] New Trial 275 ⟜72(2)**

275 New Trial  
    275II Grounds  
        275II(F) Verdict or Findings Contrary to Law or Evidence

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

473 P.2d 487
12 Ariz.App. 562, 473 P.2d 487
**(Cite as: 12 Ariz.App. 562, 473 P.2d 487)**

Page 4

275k67 Verdict Contrary to Evidence
    275k72 Weight of Evidence
        275k72(2) k. Weighing Evidence as Court Function. Most Cited Cases
   (Formerly 275k72)

Trial 388 ⇌178

388 Trial
   388VI Taking Case or Question from Jury
      388VI(D) Direction of Verdict
         388k178 k. Hearing and Determination. Most Cited Cases
On a new trial motion, trial judge may weigh the evidence and act to prevent a miscarriage of justice even though there is substantial evidence to support the verdict; however, there can be nothing discretionary about a directed verdict.

**[17]** Trial 388 ⇌178

388 Trial
   388VI Taking Case or Question from Jury
      388VI(D) Direction of Verdict
         388k178 k. Hearing and Determination. Most Cited Cases
Motion for a directed verdict is either grantable, as a matter of law, or it is not; there can be no weighing of the evidence and passing upon the merits of such a motion. 16 A.R.S. Rules of Civil Procedure, rule 59.

**[18]** Trial 388 ⇌168

388 Trial
   388VI Taking Case or Question from Jury
      388VI(D) Direction of Verdict
         388k167 Nature and Grounds
           388k168 k. In General. Most Cited Cases

Trial 388 ⇌176

388 Trial
   388VI Taking Case or Question from Jury
      388VI(D) Direction of Verdict
         388k175 Operation and Effect of Motion or Request
           388k176 k. In General. Most Cited Cases
Trial judge is authorized to direct a verdict in favor of one party only where no evidence has been introduced which will justify a reasonable man in returning a verdict in favor of the other party; and not only is the evidence viewed in a light most favorable to case of party against whom the motion is made, but the truth of whatever evidence he has introduced, together with all reasonable inferences to be drawn therefrom, are taken as admitted.

**[19]** Automobiles 48A ⇌245(50.1)

48A Automobiles
   48AV Injuries from Operation, or Use of Highway
      48AV(B) Actions
         48Ak245 Questions for Jury
           48Ak245(50) Proximate Cause of Injury
              48Ak245(50.1) k. In General. Most Cited Cases
   (Formerly 48Ak245(50))
In wrongful death action brought against driver of pickup truck which struck side of bridge when driver failed to negotiate sharp curve, evidence favoring the driver, viewed in light most favorable to him, was, though weak, not "so weak" as to warrant direction of a verdict, since a reasonable man might conceivably find that driver's negligence was not the proximate cause of the accident.

**[20]** Negligence 272 ⇌1726

272 Negligence
   272XVIII Actions
      272XVIII(E) Instructions
         272k1726 k. Rescues and Emergencies. Most Cited Cases
   (Formerly 272k139(1))
Sudden emergency instruction is proper only when the defendant was free of negligent conduct prior to the "emergency" or crisis and the acts which it precipitated.

**[21]** Automobiles 48A ⇌246(44)

48A Automobiles
   48AV Injuries from Operation, or Use of Highway
      48AV(B) Actions
         48Ak246 Instructions
           48Ak246(39) Applicability to Pleadings and Evidence
              48Ak246(44) k. Defects in Vehicles. Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

473 P.2d 487
12 Ariz.App. 562, 473 P.2d 487
**(Cite as: 12 Ariz.App. 562, 473 P.2d 487)**

Page 5

As the testimony of defendant himself, driver of pickup truck which struck side of bridge when defendant failed to negotiate sharp curve, indicated that he did not begin to attempt to slow his truck until well after he had passed two warning signs which commanded a "slow" speed, and as defendant was at those times traveling at a speed in excess of that established by another sign to be maximum negotiable speed for the turn, defendant's failure to take prompt heed of the warning signs was antecedent negligence which barred the giving of a sudden emergency or imminent peril instruction with respect to defendant's claim that his accelerator stuck.

*564**489 Westover, Keddie & Choules, by Tom C. Cole, Yuma, for appellant.
Richards & Heilman, by Harlan Heilman, Yuma, for appellee.
HAIRE, Judge.
This appeal requires us to review an order granting plaintiff-appellee's motion for a new trial in a wrongful death action. The principal question raised concerns the scope of the trial court's discretion in weighing conflicting evidence and arriving at a conclusion that the jury's verdict based thereon must be overturned and a new trial granted. Because of the frequency of recurrence of this type of question in appeals brought before this Court we have discussed the facts and the law in greater detail than normally would be the case.

The accident in question occurred on Labor Day, 1967. The defendant (appellant here) Stevan Cano was sitting at home in Yuma drinking beer and watching television when one Alice Alvarez and some other neighborhood young people prevailed upon him to take them swimming at the SenatorWash Dam, some 20 miles away in nearby California. When defendant had finished his beer, the party of twelve-consisting of eleven children of varying ages and defendant-left for the Dam. There was considerable conflict in the testimony as to the time of departure, but according to defendant the party set out some time 'after one' o'clock,[FN1] and arrived at the Dam some time 'after two'. Defendant drove a pick-up truck owned by his corporate employer. He had been driving the truck for three or four years, and it was, so far as he knew, in good working order. Before leaving Yuma, defendant stopped at a market and bought two 'tall' (16 ounce) cans of beer for himself and soft drinks for his passengers. Defendant drank one of these cans of beer as he was driving to the Dam.

FN1. All references to time herein are to 'Arizona' or Mountain Standard Time, as opposed to 'California' or Pacific Standard Time, sometimes referred to in the transcript.

Upon arrival at the Dam, defendant did some swimming, in connection with watching over his own two small children. He also did considerable socializing with some acquaintances he met at the Dam, and he admittedly drank the remaining 16 ounce can of beer purchased in Yuma and, in addition, 'up to' four 7 ounce cans of beer provided by his acquaintances.

Defendant gathered the children and commenced the return trip to Yuma about 5:45 p.m. Seventeen year old Ray Smith *565**490 and thirteen year old Jack Pugh were with defendant in the cab of the truck. The other nine, including plaintiff's decedent, were riding in the bed of the truck. The fatal accident took place about 10 or 15 minutes later, when the truck crashed into one side of a bridge and on into a wash below as a result of defendant's failure to negotiate a sharp leftward curve in the highway leading into the bridge.

Between the Dam and the bridge, defendant passed the automobile in which his acquaintances whom he had seen at the Dam were riding. The unrestricted speed limit on the highway was 65 miles per hour. Defendant testified that after he accelerated somewhat to pass the car, he slowed up a little to a speed of about 40 to 45 miles per hour. He was not watching the speedometer, however, and Ray Smith, who did observe the speedometer, testified that the defendant was driving at a rate of 55 or 60 when he passed the car, and that he maintained that speed after the overtaking. Alice Alvarez, a day short of fifteen years of age at the time, testified that defendant 'started going fast' when he passed the car and maintained the same speed thereafter. As he approached the bridge, defendant passed two signs, one reading 'SLOW DANGEROUS CURVE 1000 FEET', and the other reading 'SLOW DANGEROUS CURVE 500 FEET'. A local police officer testified that only a skillful driver could negotiate the curve at as much as 25 miles per hour. Defendant, who had driven the same road on two previous recent occasions, testified that he was 'paying attention to the kids' and did not notice the signs. He admittedly made no effort to slow the truck until well after he had passed both signs. Questioned in this regard by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

473 P.2d 487
12 Ariz.App. 562, 473 P.2d 487
**(Cite as: 12 Ariz.App. 562, 473 P.2d 487)**

Page 6

plaintiff's counsel, defendant testified as follows:
'Q All right. Now, had you been alert and saw that sign 'Slow Dangerous Curve 1000 Feet' you would have started to slow up right then, wouldn't you?'
'A I probably would have, yes, sir.'
'Q And had you been alert and saw that sign at five hundred feet, you would have slowed up right then, wouldn't you?'
'A Well, I was paying attention to the kids; I guess I didn't notice.'
'Q I say, had you been alert and watching the road you would have started to slow up long before you got to the bridge, wouldn't you?'
'A I was trying to keep alert on that road.'

There was testimony that defendant was driving with one hand as he approached the bridge. Defendant was unable to state in person at the trial just when he first attempted to slow the speed of the truck. At a pretrial deposition, however, which was read into evidence, he 'guessed' that he first attempted to 'stop' the vehicle '(a)bout one hundred feet' from the bridge. At whatever point defendant did first attempt to apply the brakes, his explanation was that they did not work properly. He told the investigating officers that the brakes 'faded' after application, and he testified at the trial that he 'pumped' the brakes but was unable to get any 'pedal'. However, the evidence did indicate that at some point close to the bridge defendant did 'slam on' the brakes, with effect, and that the truck laid down skid marks ranging from 50 to 65 feet in length. Defendant also testified that the accelerator must have been stuck, or was stuck, because the truck continued to travel 'too fast', and because Ray Smith got down on the floor of the cab and attempted to pull out or free the accelerator. Smith testified that he did this because he saw defendant 'poking up toward the gas pedal' with his foot and he (Smith) 'figured something was wrong'. Smith stated that the accelerator was 'stuck', but his testimony is unclear as to whether it was in a depressed or normal ('out') position. Defendant did not mention any difficulty with the accelerator to the investigating officers at the scene of the accident, and apart from the foregoing summarized testimony, there was no evidence**566****491** introduced at the trial tending to show any malfunction of either the brakes or the accelerator.

After the accident, defendant voluntarily submitted to a blood alcohol test. The test was performed in Yuma at about 7:30 p.m. on the day of the accident. The person who administered the test had considerable experience. She reported that the test revealed that defendant's blood contained 0.22% Alcohol by weight at the time the test was made. Defendant's counsel took vigorous exception to the volume-to-weight conversion factor used by the tester, but if the conversion figure suggested by defendant's counsel as correct had been used, the resulting percentage of alcohol in the blood would have been 0.19% Instead of 0.22%, still in excess of the 0.15% Figure which gives rise to a statutory presumption that one is under the influence of intoxicating liquor. See A.R.S. s 28-692, subsec. B(3). Defendant, who weighed between 125 and 130, admitted to consuming 84 ounces of beer on the day in question, and on this basis an expert called in his behalf hypothesized that his blood would have been about 0.08% Alcohol by weight at the time of the accident. Investigating officer Hartley indicated that he was somewhat surprised to hear that the test result had been as high as 0.22%, but he also indicated that had defendant not been in a state of ostensible shock immediately after the accident, he would have been of the opinion that he was under the influence of alcohol.

Trial of the case ended in a jury verdict for defendant. Plaintiff moved for a new trial. In an order which leaves nothing to be desired Vis a vis the specificity requirements of Rule 59(m) of our Rules of Civil Procedure, 16 A.R.S., the trial judge outlined the evidence which he considered most pertinent and stated his conclusion that the only logical inference to be drawn from defendant's testimony was that he was negligent in driving at an unsafe speed and in failing to keep a proper lookout, and that such negligence was at least A proximate cause if not The proximate cause, of the accident. He accordingly granted plaintiff's motion for new trial on the following three grounds (numbered as in plaintiff's motion):
'2. The court committed error in instructing the jury on 'imminent peril' * * *.
'4. The verdict is not justified by the evidence and is contrary to law.
'5. Error in overruling plaintiff's motion for a directed verdict * * * on the issue of liability at the close of all the evidence.'

The trial judge held that there was no merit in two other grounds urged by plaintiff, one concerning remarks of opposing counsel, and the other stating that the 'verdict is the result of prejudice or passion.'

[1] An order granting a new trial will be affirmed if it is justified on any one of the grounds stated in the

473 P.2d 487            Page 7
12 Ariz.App. 562, 473 P.2d 487
**(Cite as: 12 Ariz.App. 562, 473 P.2d 487)**

order. Heaton v. Waters, 8 Ariz.App. 256, 258, 445 P.2d 458, 460 (1968); Cf. General Petroleum Corp. v. Barker, 77 Ariz. 235, 240, 269 P.2d 729, 732 (1954), and Zevon v. Tennebaum, 73 Ariz. 281, 283, 240 P.2d 548, 549 (1952).[FN2] With this in mind, we focus attention on the ground numbered '4', stating that the 'verdict is not justified by the evidence and is contrary to law'.

> FN2. Both of the Supreme Court cases cited hold that where a Motion for new trial assigns several grounds and the order granting the motion specifies none, the reviewing court is compelled to scan each of the grounds listed in the motion in search of a ground for affirmance. The effect given Rule 59(m) in Yoo Thun Lim v. Crespin, 100 Ariz. 80, 411 P.2d 809 (1966), changed this rule. It is well to bear in mind that Yoo Thun Lim also qualifies many other previous cases in this regard.

[2][3] This ground is phrased in the broad general terms of subparagraph (8) of Rule 59(a), which subrule enumerates the grounds upon which a new trial may be granted. Were we to give a strict literal *567**492 reading to the language of paragraph '4' of the order and subparagraph (8) of Rule 59(a), it might be possible for us to reach a conclusion that this ground can support the granting of a new trial insofar as the evidence is concerned Only if there is no substantial evidence to sustain the verdict, so that it could not stand as a matter of law. But if such a construction would be literally permissible, we do not think that it would be correct. There is no general ground listed under Rule 59(a) which explicitly permits a trial judge to grant a new trial when the verdict is contrary to the Weight of the evidence, and yet it seems clear that an Arizona trial judge continues to have the power to grant a new trial in that situation. See State v. Ross, 97 Ariz. 51, 53, 396 P.2d 619, 621 (1964), overruled as to the consequences of failure to comply with the specificity requirements of Rule 59(m) in Yoo Thun Lim v. Crespin, 100 Ariz. 80, 83, 411 P.2d 809, 811 (1966). In General Petroleum Corp. v. Barker, Supra, the court held that the phrase 'contrary to the evidence' was equivalent to 'against the weight of the evidence'. 77 Ariz. at 243, 269 P.2d at 734. In our view, the terms of Rule 59(a) and Ross and Barker (unaffected in this respect by Yoo Thun Lim) indicate that an order granting a new trial which refers to the evidence in the general terms of Rule 59(a)(8) is to be reviewed in the same manner as if the trial judge had stated that the verdict was against the weight of the evidence, and that this is so even though the trial judge also indicates a post-trial inclination to direct a verdict (as to liability) in favor of the moving party. Compare Heaton v. Waters, Supra. Any other rule, it seems, would have appellate courts drawing fine distinctions in reviewing new trial orders based upon Rule 59(a)(8) according to slight variations upon or additions to the language of the rule. This would result in losing sight of the basically Discretionary role of the trial judge in such matters.

[4][5] In reviewing any new trial order it is well to bear in mind the following well-stated principles quoted from State ex rel. Morrison v. McMinn, 88 Ariz. 261, 262, 355 P.2d 900, 901-902 (1960):
'While it is true that the granting of a new trial is to a great extent discretionary with the trial court, such discretion, although broad, is legal and not arbitrary and must be exercised according to reason and law. Kotsonaros v. State of Minn., 79 Ariz. 368, 290 P.2d 478; City of Phoenix v. Harlan, (75 Ariz. 290, 255 P.2d 609) supra; Zevon v. Tennebaum, 73 Ariz. 281, 240 P.2d 548. The trial judge must of course have wide discretion because of his intimate relation to the trial and primary justice. This does not mean, however, that this court should abandon all supervision and fail to impose the limitation of legal standards on the exercise of trial court judicial discretion. Thus, where the probative force of the evidence clearly demonstrates that the verdict of the jury is correct, the trial judge exceeds the bounds of judicial discretion in granting a new trial and it is the duty of this court to reverse the action. See, Smith v. Moroney, 79 Ariz. 35, 282 P.2d 470; Bradley v. Philhower, 81 Ariz. 61, 299 P.2d 648.'

[6][7][8] Smith v. Moroney, 79 Ariz. 35, 282 P.2d 470 (1955), is one of the more fully articulated decisions of our Supreme Court in the area of new trial orders. Smith indicates that the trial judge must have carefully weighed the evidence and be convinced that the verdict is Contrary to the weight of the evidence before he can grant a new trial on the state of the evidence; in other words, he cannot grant a new trial when the evidence merely balances on his mental scales. 79 Ariz. at 38, 282 P.2d at 472. But once the trial judge has exercised his discretion in favor of granting a new trial, his order will be affirmed even if in the view of the appellate court the evidence is merely 'equiponderant', i.e., evenly

473 P.2d 487  
12 Ariz.App. 562, 473 P.2d 487  
**(Cite as: 12 Ariz.App. 562, 473 P.2d 487)**

Page 8

balanced on the mental scales of the appellate court. This rule is a corollary of the principle that the burden *568**493 is upon the appellant to show affirmatively a manifest abuse of discretion. Thus, the order will be affirmed unless the appellate court finds the weight of the evidence to be In favor of the verdict. And in the weighing process, due regard must be given to the 'quality' or belief-inducing effect of the evidence, and not merely to numbers of witnesses and quantity of testimony. Summarizing, Smith states:

'We do not agree with the defendants that the trial court abuses its discretion in granting a motion for new trial where the evidence is equiponderant or nearly so or where there is substantial evidence to support a verdict, at least when used in the sense as used by defendants, that of simply measuring the effect of the words of one witness as opposed to the words of another or of others, for the reason that this deprives the trial judge of the right to determine the innate fitness of the justice dispensed. We will not disturb an order granting a new trial unless the probative force of the evidence clearly demonstrates that the trial court's action is wrong and unjust and therefore unreasonable and a manifest abuse of discretion.' (79 Ariz. at 39, 282 P.2d at 472).

See also, to like effect, Pima County v. Bilby, 87 Ariz. 366, 376, 351 P.2d 647, 653 (1960); Bradley v. Philhower, 81 Ariz. 61, 63-64, 299 P.2d 648, 649-650 (1956); and General Petroleum Corp. v. Barker, Supra.

[9] While a cryptic order such as the one in Pima County v. Bilby, Supra, might be a 'nullity' under the Yoo Thun Lim principles implementing Rule 59(m) as extended in Estabrook v. J. C. Penney Company, 105 Ariz. 302, 464 P.2d 325 (1970), we have not found any decision of our Supreme Court which restricts or alters the 'equiponderant' test articulated in Smith v. Moroney, Supra where an order granting a new trial on the basis of the evidence under Rule 59(a)(8) states with particularity how the evidence is contrary to the verdict. Division Two of this Court has concluded that the trial judge's status as a 'thirteenth juror' survived the new departure of our Supreme Court in its implementation of Rule 59(m) in Yoo Thun Lim, Supra. See Powell v. Klein, 11 Ariz.App. 360, 464 P.2d 806 (1970), quoting from Heaton v. Waters, 8 Ariz.App. 256, 260, 445 P.2d 458, 462 (1968). The correctness of this conclusion seems clearly indicated by the decision of our Supreme Court in State v. Thomas, 104 Ariz. 408, 454 P.2d 153 (1969), which, although a criminal case, quotes extensively from cases involving new trial orders in civil actions. Although it is conceivable that court congestion and other factors may eventually force additional restrictions on the granting of new trials, we similarly conclude that the 'equiponderant' test survives Yoo Thun Lim in those cases in which there has been a compliance with the requirements of Rule 59(m).

[10][11] The concept of the trial judge as a 'thirteenth juror' is set forth in clear, Affirmative terms in Brownell v. Freedman, 39 Ariz. 385, 389, 6 P.2d 1115, 1117 (1932). While we would not suggest that the federal authorities are closely apposite in the area of new trial orders,[FN3] we think that the following carefully limited statement of the thirteenth juror concept in 6A J. Moore, Federal Practice s 59.08(5), at 3818-3819 (2d ed. 1953), is wholly approvable:

> FN3. Our Rule 59 differs in many respects from Rule 59 of the Federal Rules of Civil Procedure. Much of our Rule 59 comes from Minnesota. In the federal practice, an order granting a new trial is generally not appealable, and it is only rarely reviewable at all. See 3 W. Barron and A. Holtzoff, Federal Practice and Procedure with Forms, s 1302.1. On the other hand, our Supreme Court has stated that:

'It has been appreciated that meaningful review (of new trial orders) * * * is required to maintain the integrity of the jury trial system and the practical value of court adjudication.' Zugsmith v. Mullins, 86 Ariz. 236, 237, 344 P.2d 739, 740 (1959).

'There are statements in the (federal) cases that, in ruling on the motion, the *569**494 trial judge acts as a thirteenth juror. Properly understood and applied, no fault can be found with them for the judge does act to evaluate and weigh the evidence. But while he has a responsibility for the result no less than the jury, he should not set the verdict aside as against the weight of the evidence merely because, if he had acted as trier of the fact, he would have reached a different result; and in that sense he does not act as a thirteenth juror in approving or disapproving the verdict. And since the credibility of witnesses is peculiarly for the jury it is an invasion of the jury's province to grant a new trial merely because the evidence was sharply in conflict.

'The trial judge, exercising a mature judicial discretion, should view the verdict in the overall

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been then it is his duty to set the verdict aside; otherwise not.'(Footnotes omitted).

[12][13] Applying the foregoing principles, it is clear that the trial judge was justified in granting of a new trial in the present case. There was ample evidence of negligence on the part of the defendant which was the proximate cause of the death of plaintiff's decedent. The evidence to the contrary was at best of less than equal force. There were broad gaps and patent inconsistencies in defendant's testimony, and his defense of mechanical malfunction was less than strongly supported. While the trial judge's ruling that the verdict was not the result of prejudice or passion eliminated those factors as an explanation for it, lack of evidentiary justification is an independent and self-sufficient ground for setting aside a verdict and granting a new trial under Rule 59(a). We affirm the order on this basis.

The trial judge also ruled in support of his new trial order that a verdict should have been directed in plaintiff's favor on the question of liability on plaintiff's motion at the close of all of the evidence. The issue might arise on retrial, and we will therefore discuss it.

In many if not the great majority of jurisdictions, a clear distinction is drawn between the state of the evidence which will justify the granting of a party's motion for a new trial, and the state of the evidence which will justify the granting of the same party's motion for a directed verdict, or for judgment notwithstanding the verdict. Thus, the federal law on the subject is summarized in 6A J. Moore, Federal Practice s 59.08(5), at 3817-3818 (2d ed. 1953):
'As pointed out earlier in this discussion, a motion for a directed verdict or for judgment n.o.v. raises the legal sufficiency of the evidence, and is to be sharply distinguished from a motion for a new trial on the ground that the verdict is against the weight of the evidence. The latter motion is addressed to the sound discretion of the trial court, which may set aside the verdict as contrary to the preponderance of the evidence, although a directed verdict is not justified.

As Judge Parker stated in Aetna Casualty & Surety Co. v. Yeatts (122 F.2d 350, 352-353 (4th Cir. 1941)):
'On such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."
(Footnotes omitted).

*570 **495 In a great many of the Arizona cases, however, we find the following principle stated:
'This Court has consistently held that the trial court is justified in directing a verdict only where the evidence is insufficient to support a contrary verdict Or so weak that the (trial) Court would feel constrained to set aside such a verdict on a motion for a new trial.'(Peterson v. Salt River Project Agr. Imp. & Pow. Dist., 96 Ariz. 1, 5, 391 P.2d 567, 569 (1964). (Emphasis ours).

To like effect, See Johnson v. Board of Education, 101 Ariz. 268, 274, 419 P:2d 52, 58 (1966); Davis v. Weber, 93 Ariz. 312, 314-315, 380 P.2d 608, 610 (1963), and cases cited therein.

[14] Does the emphasized portion of the passage quoted mean that a trial judge is justified in directing a verdict in any case in which he might justifiably set aside a contrary verdict as being against the weight of the evidence and grant a new tral?

[15][16][17][18] Clearly, in our view, the answer must be in the negative. Unless the trial judge has committed reversible legal error, a motion for a new trial is addressed to his discretion. As hereinabove indicated, he may on such a motion weigh the evidence, and act to prevent a miscarriage of justice even though, as pointed out in Smith v. Moroney, Supra, there is substantial evidence to support the verdict. There can be nothing discretionary, however, about a directed verdict. A motion for a directed verdict is either grantable, as a matter of law, or it is not. There can be no weighing of the evidence in passing upon the merits of this latter motion. And in passing upon a motion for a directed verdict, the following principles, quoted from City of Phoenix v. Brown, 88 Ariz. 60, 64, 352 P.2d 754, 757 (1960), are applicable:
'In Durham v. Firestone Tire Etc. Co., 47 Ariz. 280, 55 P.2d 648, this Court announced the rule that the

473 P.2d 487                                                                                                          Page 10
12 Ariz.App. 562, 473 P.2d 487
**(Cite as: 12 Ariz.App. 562, 473 P.2d 487)**

trial judge is authorized to direct a verdict in favor of one party Only where no evidence has been introduced which would justify a reasonable man in returning a verdict in favor of the other party. And not only is the evidence viewed in a light most favorable to the party's case against whom the motion is made, but the truth of whatever evidence he has introduced, together with all reasonable inferences to be drawn therefrom, are taken as admitted.'(Emphasis in original).

We thus conclude that when our Supreme Court has stated that a directed verdict can be granted when the evidence in support of a potential jury verdict in favor of the movant's opponent is 'so weak' that the trial court 'would feel constrained to set aside such a verdict on a motion for a new trial' (Peterson, Supra,) it has referred to the situation where there is no 'substantial' or 'competent' evidence At all to support such a potential verdict. See Casey v. Beaudry Motor Company, 83 Ariz. 6, 315 P.2d 662 (1957). In that situation, the party who will have had an unsupported and unsupportable verdict brought in against him would be entitled to a new trial (if any further litigation is necessary) as a matter of legal right, and not as a matter of the exercise of judicial discretion.

[19] The question here then is whether reasonable men might differ as to whether negligent conduct on the part of the defendant was the proximate cause of the death of plaintiff's decedent. As has been indicated, there was ample proof of defendant's causal negligence. Our view of the Weight of the evidence has been clearly indicated, and we would not flinch at calling the evidence in favor of a verdict for the defendant 'weak'. Yet, if we view all of the evidence on all aspects of the case in the light most favorable to defendant-speed, brakes, accelerator, alcohol, and conflicting estimates of time and distances-and give defendant the benefit of every inference, we are not prepared *571 **496 to say that the evidence was 'so weak' as to warrant direction of a verdict. We think that a reasonable man might conceivably find that defendant's negligence was not the proximate cause of the accident. Liability is thus for jury determination. Cf. Heaton v. Waters, 8 Ariz.App. 256, 260, 445 P.2d 458, 462 (1968).

The only question remaining is whether the giving of an instruction on 'imminent peril' (or 'sudden emergency') was proper. The instruction given reads as follows:

'A person who without negligence on his part is suddenly and unexpectedly confronted with peril arising from either the actual presence or the appearance of emminent (sic) danger to himself or to others, is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments.
'His duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation.'

While the wisdom of giving a 'sudden emergency' instruction in any case has been debated,[FN4] our Supreme Court has given its approval to such an instruction under some circumstances. City of Tucson v. Wondergem, 105 Ariz. 429, 466 P.2d 383 (1970); See also Gilbert v. Quinet, 91 Ariz. 29, 369 P.2d 267 (1962); and Campbell v. Brinson, 89 Ariz. 197, 360 P.2d 211 (1961). The last authority is a brake failure case.

> FN4. Former Judge John F. Molloy of Division Two of this Court, in his article Jury Instructions in Negligence Cases, 6 Arizona Law Review 27, 35-36 (1964), observes that 'Almost every accident is an emergency at one stage of its occurrence', and concludes:

'It is the writer's conception that this doctrine of 'sudden emergency' should be left to the psychologists and perhaps the legislators, but has no proper place in jury instructions. The Illinois Committee (i.e., The Illinois Supreme Court Committee on Jury Instructions) concurs, and recommends against ever giving the instruction, labeling it 'argumentative '. (Footnote omitted).

[20][21] We see no proper place for the instruction in this case. The instruction is only proper when the defendant is free of negligent conduct prior to the 'emergency' or crisis and the acts which it precipitates. The sticking accelerator constituted the claimed 'sudden emergency'. However, the testimony of the defendant himself indicated that he did not begin to attempt to slow the truck until well after he passed the two warning signs which had commanded a 'slow' speed. Also, by his own testimony, he was at those times traveling at a speed in excess of that established by another to be the maximum negotiable speed for the turn. We agree with the trial court that this failure to take prompt heed of the warning signs was antecedent negligence

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

473 P.2d 487
12 Ariz.App. 562, 473 P.2d 487
**(Cite as: 12 Ariz.App. 562, 473 P.2d 487)**

Page 11

which barred the giving of the sudden emergency or 'imminent peril' instruction.

The order of the trial court granting plaintiff a new trial is affirmed.

EUBANK, P.J., and JACOBSON, J., concur.
Ariz.App. 1970.
Cano v. Neill
12 Ariz.App. 562, 473 P.2d 487

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.